# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 1:19-CR-318 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| | : | (Magistrate Judge Carlson) |
| EDWARD JOHN HART | : | |

## MEMORANDUM AND ORDER

### I.     Introduction

This case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. The parties have, in turn, notified us that the motion may be resolved

1

on the current record before the court, with the additional stipulation that the defendant suffers from asthma. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is GRANTED.

## II.    <u>Factual Background and Procedural History</u>

On October 30, 2019, the defendant and others were charged with bank fraud, aggravated identity theft, theft of mail, obstruction of mail, and theft of postal keys. None of these offenses gave rise to any presumption in favor of detention based upon risk of fight or danger to the community, and the defendant was initially released on conditions of release when he was first taken into custody in New York. The defendant then appeared in this district, as required by his bail conditions. Despite his initial release on bail, at Hart's first appearance in this district, on November 26, 2019, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant

pending trial. The Government then presented evidence which indicated that Hart had continued to engage in financial frauds after he was first arrested by local authorities and released on bail in Pennsylvania for the conduct which gave rise to these federal offenses. The evidence also indicated that Hart was alleged to have committed these offenses while on state probation following a conviction for similar offenses in the state of New York. Further, the pre-trial services report revealed that Hart had prior state arrests and convictions for financial fraud offenses in New York state. Finally, the Government introduced evidence which indicated that Hart had been in communication with the spouse of a co-defendant, an arguable violation of the release conditions initially set by the court in the Southern District of New York. Taking all of these factors into consideration following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented an on-going financial danger to the community. We reached this result based upon the information presented at this hearing, notwithstanding the pre-trial services reports which recommended Hart's release on bail conditions.

The instant motion for temporary release notes Hart's initial release on bail conditions as well as the pre-trial services report recommendation that there were conditions of release which could be set in this matter. The defendant's motion for release then rests upon an additional concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community

spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: The parties stipulate that Hart suffers from asthma—a medical condition which is recognized to exacerbate the medical risks he faces in a confined setting if he contracts coronavirus. United States v. Ramos, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020).

### III. Discussion

#### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must

> be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these

5

enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering

from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of America v. Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a

prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release

would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. The Defendant's Motion for Temporary Release Will Be Granted.

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. While we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020), in this case, Hart provides both a genuine, generalized concern regarding the risks created by COVID-19, and notes that a pre-existing medical condition, asthma, makes him particularly susceptible to adverse medical outcomes if he contracts coronavirus in a custodial setting. Thus, Hart provides some evidence of "particular vulnerability to the disease," proof which may "constitute a compelling reason for release under § 3142(i)." United States of America v. Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

Yet while proof of a medical diagnosis like asthma may be necessary to state a claim under § 3142(i), United States v. Ramos, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020)(releasing asthmatic defendant), this diagnosis, standing alone, is not sufficient to automatically compel a defendant's release. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md.

Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release). Instead, we must balance this medical concern against the remaining factors which we are enjoined to examine.

When we balance these specific health concerns against the considerations which led us to order the defendant's detention in the first instance, we find that these factors favoring continued detention, while substantial, do not outweigh Hart's health and safety concerns. On this score, we note that none of Hart's charges give rise to a presumption that he presents an immediate physical danger to the community or a risk of flight. Further, pre-trial services had initially recommended Hart's release on bail conditions, authorities in New York released Hart on bail, and while on release Hart appeared as required before this court.

Notwithstanding all of these factors which favored Hart's release, we ordered Hart detained after concluding that he had arguably violated his bail conditions set by the federal court in New York; had a prior record marked by similar financial crimes; had allegedly committed this offense while on state parole; and appeared to

have engaged in other offense conduct following his arrest and release in Pennsylvania on the state charges which formed the basis for this federal indictment.

All of these factors suggested that Hart presented a risk of financial harm to others, a risk that was significant, and could not readily be ameliorated through conventional bail conditions. While we continue to harbor these concerns, in light of the materially changed facts and circumstances that have transpired since the entry of our initial order, we believe that we can now impose a series of strict conditions, tantamount to home incarceration, which would address these concerns in a noncustodial setting. In our view home detention addressing the financial safety of third parties from further mail thefts by ensuring that Hart may only gain access to his own mail while awaiting trial. Further, any violation of these strict conditions would result in the revocation of this release and reincarceration for Hart.

## IV.   <u>Conclusion</u>

Weighing and balancing these countervailing considerations, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be GRANTED.[1] An appropriate order follows.

---

[1] In reaching this result we emphasize the extreme narrowness of our ruling. This case involves a defendant whose criminal record consists solely of non-violent property offenses. The defendant is charged with theft and fraud offenses, none of which give rise to a presumption in favor of detention based upon danger to the community. The defendant was recommended for release on bail, and in fact, was briefly released. Furthermore, the parties stipulate that the defendant has a medical condition which may be exacerbated by CVID-19 infection. While considerations

So ordered this 9th day of April 2020.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

---

of financial safety for others led us to revoke the defendant's release, we now find that we can address adequately address these considerations through a strict program of home detention.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-318** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **EDWARD JOHN HART** | : | |

## **O R D E R**

For the reasons set forth in the accompanying Memorandum Opinion, the Defendant's Motion for Temporary Release Pursuant to 18 U.S.C. § 3142(i) is GRANTED and the defendant is released subject to the following conditions of release:

1. The defendant must not violate federal, state, or local law while on release.

2. The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

3. The defendant must provide the address and telephone number of the location where he will reside prior to, and as a condition of, his release and must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

4. The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

5. The defendant shall submit to screening for COVID-19 by the detention facility prior to release. If the defendant is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19, the defendant shall not be released to the public because of the danger the defendant poses to the community.

6. Throughout release, the defendant shall agree to abide by the public health directives issued at the Local, State, and Federal level concerning the spread of COVID-19. Should the defendant at any time exhibit symptoms consistent with COVID-19, the defendant shall contact appropriate medical professionals and communicate the defendant's concerns to Pretrial Services.

7. The defendant is restricted to 24-hour-a-day lock-down at his residence except for medical necessities and court appearances or other activities specifically approved by the court and will submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided. In addition, the defendant must: (a) submit to supervision by the pretrial services office of the court and report for supervision in the Southern District of New York as directed within 72 hours of his release from custody; (b) surrender any passport to the clerk of the court; (c) not obtain a passport or other international travel document while this case is pending; (d) abide by the following restrictions on personal association, residence, or travel: travel is limited to New York, New Jersey and Pennsylvania, for court travel only; (e) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants; (f) not possess a firearm, destructive device, or other weapon; (g) not use alcohol excessively; (h) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner; (i) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing; (j) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer; (k) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

The defendant is approved for temporary release pursuant to 18 U.S.C. § 3142(i).

Accordingly, the parties shall provide the Court with status reports every 28 days

detailing the defendant's compliance with these temporary release conditions and providing any recommendations regarding the defendant's release or detention. the government shall also immediately report and violation of these temporary release conditions to the court. **The defendant is advised that a violation of these conditions may result in the defendant's arrest and re-incarceration, as well as the filing of new and additional criminal charges**.

    A copy of this order will be provided to the parties, the U.S. Marshal's Service, and the U.S. Probation office.

    So ordered this 9th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge